[Civ. No. 5299. Fourth Dist. Jan. 10, 1957.]

CLARENCE CLARK et al., Plaintiffs and Appellants, v. CARL F. REDLICH et al., Defendants and Appellants; R. L. SEAL et al., Respondents.

Preston Turner for Plaintiffs and Appellants.

William P. Webb and Webb & Lae for Defendants and Appellants.

Head, Jacobs, Corfman & Jacobs for Respondents.

COUGHLIN, J. pro tem.*—In 1945, the plaintiffs Clark purchased a parcel of land, near the intersection of Lincoln Avenue and Hanson Street in Orange County, together with an easement of ingress and egress over adjoining land owned by the defendants Redlich. This easement had been created in 1929 by a written agreement between the prior owners of these properties, but never has been used. Instead, the Clarks have used a lane or road, originally described as a "two-

---

*Assigned by Chairman of Judicial Council.

wheel wagon track," along the southerly boundary of the land now owned by the defendants Seal.

The Clarks built two houses upon their property; the first in 1946 and the second in 1953. They lived in the first house; the second house was occupied by tenants. All of the people living in these houses used the road over the Seal property as their means of ingress and egress.

In 1948 or 1949, preliminary to straightening out this road, Clark endeavored to purchase a right of way for this purpose from the prior owner. In discussing this matter with a Mr. McDowell, the agent for this owner, Clark said that he had a right of way to Lincoln Avenue but wanted one to Hanson Street. Although unsuccessful in his attempt to buy a right of way Clark was given permission to use the road temporarily, until the property was sold, but was advised that the owner anticipated selling the property and would not give him a perpetual right of way.

In 1952, Clark endeavored to get a Mr. Mackay, who then owned the property, to sell him a right of way for the road, or permit the county to put through a street. Clark told Mackay that "he didn't claim any way over the road, that he wasn't making any claim on it as being his." Mackay was unwilling to sell a right of way; permit the roadway to be paved; or deed a "full width street off of one side of the property" to the county. However, he told Clark that he would not work a hardship on him, but advised him "if he had any other way he could get out of there, to try to make some arrangement because he did figure on selling." Thereafter, Clark continued to use the road, grading it about twice a year, until the property was purchased by the Seals who built a house thereon, and constructed a fence enclosing it which prevented further use of the roadway.

In the meantime, little had been done to put through a road along the easement over the Redlich property. From 1946 to 1948, Redlich had row-cropped his land, including the easement; in 1948 sowed it to permanent pasture; and thereafter fencing of the entire property was completed. In 1947, and again in 1949, Mr. Clark asked Mr. Redlich to "open up" but could get no answer.

After the construction of the Seal fence the Clarks filed an action for declaratory relief; alleged that they had an easement by grant over the Redlich property and an easement by prescription over the Seal property; and obtained a temporary injunction restraining Mr. and Mrs. Seal from preventing the

Clarks' use of the roadway in question. The Redlichs answered and cross-complained seeking to quiet title to their property. The Seals answered and prayed that they be awarded damages incurred as a result of the temporary injunction and the use of their land thereunder by the plaintiffs.

The trial court found that the Clarks had an easement over the Redlich property; did not have an easement over the Seal property; and that Mr. and Mrs. Seal sustained damages in the sum of $200 resulting from the issuance of the preliminary injunction. Judgment was entered accordingly, from which both the plaintiffs Clark and the defendants Redlich have appealed.

The Clarks contend that the judgment in favor of the defendants Seal was in error, as the facts establish that they acquired an easement by prescription over the Seal property, arising out of the use of the roadway in question; that, if they did not acquire such an easement, at least, they obtained an irrevocable license; and that the award of damages was improper.

Contrary to plaintiffs' contention, the evidence fully supports the implied finding of the trial court that their use of the roadway was not adverse or under claim of right, but was permissive and with consent of the owner. These are questions of fact and "if there is any substantial evidence to support the judgment, it must be affirmed." (*O'Banion* v. *Borba*, 32 Cal.2d 145, 147 [195 P.2d 10].) Plaintiffs' argument is based on a statement of facts which ignores the general rule that, on appeal an appellate court will "(a) view the evidence in the light most favorable to the respondent, (b) not weigh the evidence," and "(c) indulge all intendments which favor sustaining the finding of the trier of fact, . . .". (*Estate of Isenberg*, 63 Cal.App.2d 214, 216 [146 P.2d 424].)

In 1948 or 1949, and again in 1952, Clark tried to buy a right of way for the road in question. Such an offer was a recognition of the prior owners' title and disproves any contention that the use of the roadway was under a claim of right. (*Central Pac. R.R. Co.* v. *Mead*, 63 Cal. 112.) Although refusing to sell a right of way, the former owners gave plaintiffs permission to use the road. "[W]here the use of a way by a neighbor is by the express or implied permission of the owner, the continued use is not adverse and cannot ripen into a prescriptive right." (*Jones* v. *Tierney-Sinclair*,

71 Cal.App.2d 366, 370 [162 P.2d 669].)  ■  Whether the use of a roadway is adverse and under a claim of right or a "mere matter of neighborly accommodation" is a question of fact to be determined in the light of all of the circumstances disclosed by the evidence. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 150 [195 P.2d 10].)

The plaintiffs rely on the cases of *Yuba Consol. Goldfields* v. *Hilton,* 16 Cal.App. 228 [116 P. 715] ; *Crawford* v. *Lambert,* 136 Cal.App. 617 [29 P.2d 428], and *Crossett* v. *Souza,* 3 Cal.2d 721 [45 P.2d 970], in which reference is made to a presumption, arising from long continuous use, that such a use was adverse, under claim of right, and with knowledge of such claim by the owners of the property involved. Each of these cases sustain a finding of adverse possession made by the trial court. In *O'Banion* v. *Borba,* 32 Cal.2d 145, 150 [195 P.2d 10], the court said : "While many of the cases mention presumptions, the problem actually discussed therein is the sufficiency of the evidence in the light of all the circumstances disclosed." In the instant case, there is ample evidence to support the finding of the trial court. The cited cases are not authority for plaintiffs' position.

The Clarks also contend that, even though they may not have acquired a right of way over the Seal property by prescription, they did obtain an irrevocable license to use the roadway. The complaint, which is for declaratory relief, sets forth only a controversy between the plaintiffs Clark and the defendants Seal over an alleged "easement by prescription." The prayer of this complaint asks for judgment declaring whether the plaintiffs have such an "easement by prescription." ■ No mention is made of an irrevocable license either in the pleadings, or in the findings of the trial court. Such an issue may not be raised for the first time on appeal. (*Eger* v. *May Dept. Stores,* 120 Cal.App.2d 554, 561 [261 P.2d 281] ; *Stinson* v. *Blodget,* 123 Cal.App.2d 390, 391 [266 P.2d 947].) ■ "A plaintiff must recover, if at all, upon the cause of action set out in the complaint, and not upon some other which may be developed by the proofs." (*Mondran* v. *Goux,* 51 Cal. 151, 153 ; *Reed* v. *Norton,* 99 Cal. 617, 619 [34 P. 333] ; *Schirmer* v. *Drexler,* 134 Cal. 134, 139 [66 P. 180].)

The trial court found that the defendants Seal "have been damaged in the sum of $200 by virtue of the preliminary injunction heretofore ordered at the request of the plaintiffs," and awarded judgment accordingly. This finding was

not based upon any pleading. The only mention of such a matter is in the prayer to the answer of the defendants Seal which asks for damages in an undisclosed amount, incurred as a result of the issuance of the preliminary injunction. The issue of such damages was not properly before the trial court; was not a proper subject for consideration by that court; and the judgment awarding such was erroneous. ■ Damages arising out of the issuance of a temporary injunction may be recovered, if at all, only in an independent action brought for that purpose. (*People* v. *Hawley*, 207 Cal. 395, 407 [279 P. 136].)

The defendants Redlich appeal from that part of the judgment declaring the right of plaintiffs to use the easement described in the written agreement executed in 1929. These defendants contend that this easement was lost by adverse possession; was extinguished by their use of the servient tenement, for the statutory period governing adverse possession, in a manner adverse to the exercise of the easement, citing the case of *Glatts* v. *Henson*, 31 Cal.2d 368, 370 [188 P.2d 745]. In the cited case the court held that the partial occupancy of an easement by permanent buildings constituted an adverse possession which extinguished that part of the easement so occupied.

In the case at bar, it is argued that the enclosure of the whole of the servient tenement, including that part subject to the easement, by a fence, for over six years prior to the filing of the complaint, its use as a pasture during that time and its prior use for farming purposes, constituted a use adverse to the exercise of the easement. This conclusion, it is claimed, is supported by Clark's nonuser of the easement. Reliance also is placed on the testimony of the Redlichs that, in conversations between themselves and Clark in 1947 and 1949, they refused to permit him to open up the easement. This testimony is contradicted by the testimony of Clark. Conflicting interpretations thereof and conflicting inferences which might be drawn therefrom, also are presented. ■ On appeal, when the evidence is contradictory, conflicting interpretations are presented thereby, or conflicting inferences may be drawn therefrom, that which favors the judgment must be accepted as true, and that which is unfavorable must be discarded as not having had sufficient verity for acceptance by the trial court. (*Estate of Teel*, 25 Cal.2d 520, 524 [154 P.2d 384]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Tobola* v. *Wholey*, 75 Cal.App.2d 351, 355 [170 P.2d 952].)

Clark testified that, in 1947 he asked Redlich to open up and "I couldn't get no answer." "He just didn't open up, that's all"; "I don't say he did refuse but he didn't open up"; and that in 1949 "I asked him to open up again." Clark was asked, "What happened then" and replied: "No results." When asked "And did he refuse?" he answered: "I didn't get no results." To the inquiry, "What do you mean by that" Clark said "he did not open up."

Redlich testified that, at the 1947 conversation with Clark, "I just told him he couldn't go through, its all fenced" and ". . . I just said . . . I have got cattle in it and its impossible to go through," and that at the 1949 conversation, "I said 'it is all under water in the first place, you couldn't drive through, you would have to have a boat to get through.' " It appears that a part of the property is in a flood area and, at times, under water. This testimony does not establish the assertion of an adverse use under claim of right.

Clark said he used the right of way to Hanson Street over the Seal property because there was a trail there, whereas there was no road or trail across the Redlich place and it would take a "lot" of grading to get over that property.

The testimony concerning the conversations in question is not conclusive evidence that the Redlichs' use of the property subject to the easement was adverse, under claim of right or put the Clarks on notice of such a claim. These are essential elements of adverse possession (*Furtado* v. *Taylor*, 86 Cal.App.2d 346, 352 [194 P.2d 770]).

The trial court was justified in rejecting the evidence of nonuser of the easement as proof of an adverse use. There was good reason for not using this easement in view of the fact that the roadway over the Seal property was available, whereas considerable grading would have been necessary to put the Redlich property in condition for travel. ■ An easement by grant may not be lost by mere nonuser. (*Glatts* v. *Henson*, 31 Cal.2d 368, 371 [188 P.2d 745]; *Furtado* v. *Taylor*, 86 Cal.App.2d 346, 352 [194 P.2d 770].) ■ The effect, if any, of such nonuser, as a factor in accomplishing the extinguishment of an easement by adverse possession, involves the determination of a question of fact committed to the legal discretion of the trial court.

Likewise, under the circumstances of this case, whether the fencing and cultivation of the servient estate constituted acts of adverse possession was a question of fact. ■ To terminate an easement, the use of the servient tenement

508

must be such as is adverse to the exercise of the easement (*Glatts* v. *Henson,* 31 Cal.2d 368, 371 [188 P.2d 745]), and under circumstances which impart reasonable notice of the adverse nature thereof. (*Furtado* v. *Taylor,* 86 Cal.App.2d 346, 352 [194 P.2d 770].) ▋ An easement cannot be acquired or extinguished by adverse use unless the party whose rights are affected thereby has knowledge of the adverse nature of such use. This knowledge may be either actual or constructive, resulting from notice either express or implied. (*O'Banion* v. *Borba,* 32 Cal.2d 145 [195 P.2d 10]; *Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10]; *Hibberd* v. *McCosker,* 55 Cal.App. 568, 569 [203 P. 810].) ▋ Although certain uses of a servient tenement by their very nature may constitute notice of an adverse claim, (*Glatts* v. *Henson,* 31 Cal.2d 368, 371 [188 P.2d 745]) other uses thereof may appear to be only the reasonable exercise of proprietary rights, and would not be the basis for an implication of such notice. (*Pabst* v. *Finmand,* 190 Cal. 124, 129 [211 P. 11].)

▋ Fencing the Redlich property was not a use necessarily adverse to the exercise of the Clark easement, nor conclusive notice of a hostile claim. (*Mattes* v. *Hall,* 21 Cal. App. 552, 560 [132 P. 295]; *Mattes* v. *Hall,* 28 Cal.App. 361, 365 [152 P. 436]; *Hibberd* v. *McCosker,* 55 Cal.App. 568 [203 P. 810].) ▋ Moreover, the effect of the fencing of the servient tenement as an act of hostility toward the continued existence of the easement, or the assertion of a claim of right was negatived by Redlich's giving an excuse for not opening up the fence, when he said that the land was under water and it would be necessary to get a boat to go through.

▋ The acts of cultivation present a similar situation. The fact that the right of way was in pasturage did not prevent its use as a means of ingress and egress, nor was it conclusive evidence of a hostile act.

Whether the fencing or cultivation of the whole of the Redlich property was adverse to the rights of Clark under the easement, or with his implied permission and indulgence, was a question of fact. (*O'Banion* v. *Borba,* 32 Cal.2d 145, 147 [195 P.2d 10]; *Van Amersfoort* v. *Young,* 105 Cal.App.2d 22 [232 P.2d 569]; *Storrow* v. *Green,* 39 Cal.App. 123, 127 [178 P. 339].)

There is substantial evidence to sustain the implied findings of the trial court that the Redlichs' use of the servient tenement was not adverse to the exercise of the Clark ease-

ment; that such use was with the implied permission of the Clarks, and not under claim of right; and that the Clarks did not have notice or knowledge of the adverse nature of that use.

The judgment in favor of the plaintiffs and respondents Clark and against the defendants and appellants Redlich is affirmed: said respondents to recover from said appellants their costs incurred in the appeal taken by said appellants. That part of the judgment in favor of the defendants and respondents Seal and against the plaintiffs and appellants Clark awarding $200 damages is reversed, but in all other particulars is affirmed: said respondents to recover their costs on appeal from appellants Clark.

Barnard, P. J., and Mussell, J., concurred.